and because neither circumstance is likely to recur at a retrial.

## CONCLUSION

For the aforementioned reasons, Prawl's conviction is vacated and the case is remanded to the district court for further proceedings.

UNITED STATES TRUST COMPANY OF NEW YORK; The Bank of New York; The Chase Manhattan Bank (National Association), as Trustees of certain unit investment trusts; Investors Fiduciary Trust Company, as trustee of the Kemper Tax–Exempt Income Trust, Plaintiffs,

Thomas B. Bachhuber, Defendant–Counter–Claimant–Appellant,

Isaac T. Avery, Jr., Julia C. Daniel, Trustees; Eunice M. Mauger; Donald J. Phillips; Ralph A. Phillips, Defendants–Cross–Claimants–Appellants,

Annabel R. Bogdonoff, et al., Defendants–Appellants,

Sandro Clementi, individually and representatively on behalf of class of former holders of units of certain unit investment trusts, Interpleader–Appellant,

v.

Janet C. JENNER, individually and as a representative of a defendant class consisting of holders of units of the Kemper Tax–Exempt Income Trust on 11/15/92, but not during the time period 3/1/77 through 6/15/83, Defendant–Counter–Claimant–Appellee,

Robert Haserot, Defendant–Counter–Claimant–Appellee,

Steven L. Alpert, et al., Defendants–Appellees.

Nos. 98–7592, 98–7635.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1998.

Decided Feb. 19, 1999.

Jeffrey Leggett, Fiorenza & Hayes, Milwaukee, WI (John A. Fiorenza, Milwaukee, WI, Barry G. Felder, Brown Raysman Millstein Felder & Steiner, LLP, New York, NY, of counsel) for Defendant–Counter–Claimant–Appellant Bachhuber.

John F. Triggs, Camhy Karlinsky & Stein, LLP, New York, N.Y. (Gary S. Jacobson, Lovell & Stewart, LLP, New York, NY, co-counsel), for Defendants–Cross–Claimants–Appellants Avery, et al., Defendants–Appellants Bogdonoff, et al., and Interpleader–Appellant Clementi.

Edward F. Haber, Shapiro, Haber & Urmy, LLP, Boston, MA (Janet M. McGarry, Boston, MA, of counsel), for Defendant–Appellee Stevens.

John K. Weir, Haight Gardner Holland & Knight, LLP, New York, NY, for Defendants–Appellees Alpert, et al. and Defendant–Counter–Claimant–Appellee Haserot.

Robert S. Fischler, Winston & Strawn, New York, N.Y. (Jonathan H. Lewis, New York, NY, on the brief), for Defendant–Counter–Claimant–Appellee Jenner.

Michael E. Cavanaugh, Emmet, Marvin & Martin, New York, NY, for Plaintiff U.S. Trust Co.

Jack Kaplan, Carter, Ledyard & Milburn, New York, NY, for Plaintiff Bank of New York.

Frederick V. Lochbihler, Chapman & Cutler, Chicago, IL, for Plaintiff Investors Fiduciary Trust.

Before: VAN GRAAFEILAND, CABRANES, NOONAN,* Circuit Judges.

---

* The Honorable John T. Noonan, Jr., of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

**VAN GRAAFEILAND, Circuit Judge:**

These are appeals and cross-appeals from summary judgments of United States District Court for the Southern District of New York (Wood, *J.*). *See* 10 F.Supp.2d 290 (S.D.N.Y.1998). The district court's opinion, which follows closely the excellent report and recommendation of United States Magistrate Judge Sharon Grubin, is so thorough and well-reasoned that we might be well-advised to simply adopt it as our own. However, having in mind the long and tortuous history of this multi-million dollar litigation, we deem it appropriate in the interest of simplification to add a few pages to the hundreds that already have been written.

The Trusts herein are unit investment trusts ("UITs"), entities that invest in fixed portfolios of securities and issue interests ("units") in their investments to third parties. *See* 15 U.S.C. § 80a–4(2). From 1977 to early 1982, these UITs bought Washington Public Power Supply System ("WPPSS") bonds that were issued to finance construction of two nuclear power plants. On January 22, 1982, WPPSS announced that the plants would not be built because of cost overruns and other problems. On June 15, 1983, the Washington Supreme Court held that State guarantees of the bonds were *ultra vires* and therefore unenforceable. Following the resultant default, bondholders brought numerous securities law class actions against WPPSS and other defendants connected to the bond issue or the underlying construction project. These actions were consolidated into a multi-district case ("MDL 551") in the United States District Court for the District of Arizona (Browning, *J.*).

The MDL 551 litigation has been described in some detail in *In re Washington Public Power Supply System Securities Litigation,* MDL No. 551, 720 F.Supp. 1379 (D.Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir.), *cert. denied,* 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992), and repetition herein is unnecessary. It suffices to say that a settle-

ment ultimately was reached, as part of which the Trustees herein have received or will receive substantially in excess of $150 million. The instant interpleader actions were brought to determine how this money should be disbursed.

On December 29, 1992, U.S. Trust Company of New York, the Bank of New York, and Chase Manhattan Bank, as Trustees for 335 UITs, brought the first action (the "US Trust" action). On June 10, 1993, Investors Fiduciary Trust Company, as trustees for 11 UITs, filed the second action (the "Investors Fiduciary" action). The district court certified three classes of defendants for both actions: Class A—the Current Holders—those investors who acquired UIT units after June 15, 1983, the date of the State's disclaimer, and who held them either until the date that the UITs received and recorded the MDL 551 settlement funds or until the UIT's termination; Class B—the Former Holders—those investors who acquired UIT units before June 15, 1983 and who disposed of them before the UIT received the Settlement Funds or if the UIT was terminated prior to receipt of the Settlement Funds, before the UIT was terminated; Class C—the Continuous Holders—those investors who acquired UIT units before June 15, 1983 and who held them until the UIT received the Settlement Funds or until the UIT was terminated.

Essentially, the interpleader actions pit the Current and Continuous Holders against the Former Holders. The Former Holders, who owned the UIT units at the time of the WPPSS bond default, argue that even though they disposed of their UIT units before any MDL 551 settlement funds came into the UITs, they should get a share of the proceeds because, they say, they were the ones who were injured by the default. The Current and Continuous Holders argue that the UIT trust indentures expressly provide that only those investors who owned the UIT units when the settlement funds came into the UITs should get the money.

In order to resolve the issue thus created, the district court correctly looked to the language of the trust indentures. *See Elliott Assoc. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir.1988); *Meckel v.*

*Continental Resources Co.*, 758 F.2d 811, 816 (2d Cir.1985). The Certificates of Ownership, which represented ownership of the trust units in the instant case, provide in almost identical language that the Certificate holder is bound by the terms of the indentures. New York and Missouri, whose laws are expressly made pertinent herein, enforce this mandate.

The indentures herein provide, again in almost identical language:

1.  that all moneys received by the Trustee shall be held without interest in trust as part of the Trust Fund until required to be disbursed in accordance with the provisions of the indenture;

2.  that the Trustee shall establish an Interest Account, a Principal Account and a Reserve Account;

3.  that all interest received by the Trustee with respect to the Bonds held by the Trust shall be credited to the Interest Account; and

4.  that all moneys received by the Trustee in respect of the Bonds, other than amounts credited to the Interest Account shall be credited to the Principal Account; and

5.  that payments on "Principal Distribution Days" shall be made from the Principal Account and computed as of the close of business on the preceding "Record Day."

These provisions are clear and unambiguous, and ambiguity is not created simply because the parties urge different interpretations. *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990). Moreover, where, as here, a contract is unambiguous, "courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993); *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir.1992). The affidavit of the proposed witness Harmon was of this nature and appellants' reliance upon it is misplaced.

Equally misplaced is appellants' attempt to give *res judicata* or collateral estop-

pel effect to Judge Browning's comments in the MDL 551 litigation that only those bondholders who purchased WPPSS bonds prior to June 15, 1983 have a viable cause of action for securities fraud. *See* 720 F.Supp. at 1420, *supra*. In the first place, the record in the MDL 551 litigation contains no judicial finding or participant stipulation that such fraud exists. Indeed, the existence of securities fraud was negated consistently throughout the MDL 551 settlement proceedings. More importantly, the terms "bondholder" and "unitholder" are not synonymous, and the legal ramifications of the two statuses differ substantially. As the district court correctly put it, "the MDL 551 Litigation involved neither the same parties nor the same issues involved herein." 10 F.Supp.2d at 302.

We obviously have not discussed all of the arguments made by competent counsel for the Former Holders, and we see no need to do so. These are not securities fraud actions. They are contract interpretation cases, i.e., were the terms of the trust indentures complied with? The district court correctly held that they were. Accordingly its judgment of April 6, 1986 encompassing all the summary judgments is affirmed.