Joan L. **DOWNES** and Albert E. Downes, Jr. as beneficiaries and co-trustees of the estate of Phoebe A. Guibert, Deceased, and Victoria Downes Etchings and Melissa M. Downes as remaindermen of the trust created under paragraph second of the will of the late Phoebe A. Guibert, Plaintiffs,

v.

Daniel J. O'CONNELL, Esq.; Dennis G. Timko; and Merrill, Lynch, Pierce, Fenner & Smith, Defendants.

No. 99–CV–2940.

United States District Court, E.D. New York.

June 2, 2000.

**580**

Leavitt, Kerson & Leffler, Forest Hills, N.Y. (Paul E. Kerson, of counsel), for plaintiffs.

Benedict Sliney, Mineola, N.Y., for defendants Merrill, Lynch and Dennis Timko.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is the Plaintiffs' motion to re-open the settlement reached in this case on June 16, 1999 as against Defendant Merrill, Lynch, Pierce, Fenner & Smith ("Merrill, Lynch"). On June 16, 1999, the parties appeared in open court and placed a stipulation of settlement of the above-referenced case on the record. The settlement provided, in relevant part:

MR. STEVENS [counsel for Defendant O'Connell]:

... Mr. O'Connell will further instruct Merrill Lynch to transfer to an existing account in his name—in that firm with his name at that firm, .3375 of the account their [sic] maintained.

THE COURT: 33 and three-quarters percent? Is that correct?

MR. STEVENS: However you want to put it ... [A]nd 66.25 percent of that account will remain in the Phoebe A. Guibert Corporation pending the establishment at Merrill Lynch of an account in the name of the trust under the will of Phoebe A. Guibert. The sense and purpose is Mr. Kerson's clients will establish a new account, whatever they call it, trust and so forth. And the remaining 66.25 percent will then be transferred to that account.

MR. KERSON [counsel for the Plaintiffs]:

Mr. O'Connell consents it would be done immediately the first available opportunity.

MR. STEVENS: We will give the instruction immediately. How soon Merrill Lynch does it, we don't know.

THE COURT: I have an outstanding lawyer here for Merrill Lynch, and he can have it done right a way [sic].

MR. SLINEY [counsel for Merrill, Lynch]:

I instructed counsel that they can do it today. And since the proceedings are delayed today, it will be first thing in the morning.

.     .     .     .     .

THE COURT: And Merrill Lynch will accommodate them and establish this new account tomorrow; is that right?

MR. SLINEY: Yes.

.     .     .     .     .

MR. KERSON: Merrill Lynch has an important role to play, they are going to effectuate this tomorrow.

THE COURT: Mr. Sliney is very nice. He said if you were over there this afternoon they would have done it.

MR. SLINEY: I had arranged it in anticipation.

The parties agree that on June 22, 1999, six days after the settlement was placed on the record, Merrill, Lynch opened an ac-

count in the name of "JOAN L. DOWNES and ALBERT E. DOWNES, Trustees under the will of Phoebe A. Guibert," and transferred the correct amount of funds into it. Merrill, Lynch gave the transfer an effective date of June 18, 1999 for bookkeeping and interest accrual purposes.

On or about June 17, 1999, Plaintiffs Joan Downes and Albert Downes went to the Merrill, Lynch office and spoke to Defendant Dennis Timko, a Merrill, Lynch broker about transferring the funds from Merrill, Lynch to a new brokerage account at Smith, Barney, another brokerage house. The parties dispute what Timko responded. According to the Plaintiffs, Timko told them that "we can't forward these monies to you today. This will take some time." According to Merrill, Lynch, Timko instructed the Plaintiffs that they had to have their broker at Smith, Barney initiate a broker-to-broker transfer.

On July 13, 1999, Merrill, Lynch received an authorization from Smith, Barney to effect a broker-to-broker transfer of the account. Merrill Lynch processed that request on July 20, 1999, allegedly in the customary time period needed to make such a transfer. However, according to the Plaintiffs, intervening events in the stock market caused their investments with Merrill, Lynch to lose some $638,000 in value between June 17, 1999 and July 20, 1999. In this motion to reopen the settlement, the Plaintiffs seek to hold Merrill, Lynch liable for the losses in the value of the securities on the ground that, under the terms of the settlement, Merrill, Lynch was required to release the funds to the Plaintiffs upon request.

■ Settlement agreements are contracts and must therefore be construed according to general principles of contract law. *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir. 1999); *Goldman v. Commissioner of Internal Revenue,* 39 F.3d 402 (2d Cir.1994). The legal principles governing this dispute are familiar and well settled. The primary objective in contract interpretation is the give effect to the intent of the contracting parties "as revealed by the language they chose to use." *United States Trust Co. v. Jenner,* 168 F.3d 630 (2d Cir.1999), *citing Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *Sayers v. Rochester Telephone Corp.,* 7 F.3d 1091 (2d Cir.1993).

■ A contract is to be interpreted so as to give effect to the intentions of the parties as expressed in the unequivocal language employed. *Morlee Sales Corp. v. Manufacturers Trust Corp.,* 9 N.Y.2d 16, 210 N.Y.S.2d 516, 172 N.E.2d 280 (1961). A court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties. *Id.; North Fork Bank and Trust Co. v. Romet Corp.,* 192 A.D.2d 591, 596 N.Y.S.2d 449 (N.Y.A.D.1993). Evidence as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing. *W.W.W. Associates v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990); *North Fork Bank, supra.*

Having reviewed the transcript of the stipulation of settlement, the Court concludes that the parties agreed that Merrill, Lynch would immediately open a trust account in the name of the Plaintiffs, and deposit 66.25% of the funds in the Phoebe Guibert Corporation account into it. In the precise words of the stipulation of settlement:

> 66.25 percent of that account will remain in the Phoebe A. Guibert Corporation *pending the establishment at Merrill Lynch of an account* in the name of the trust under the will of Phoebe A. Guibert. The sense and purpose is Mr. Kerson's clients will establish a new account, whatever they call it, trust and so forth. And the remaining 66.25 percent will then be transferred to that account. (Emphasis supplied.)

It is undisputed by the Plaintiffs that Merrill, Lynch opened the account referenced

582

in the stipulation effective June 18, 1999, two days after the settlement, and transferred the proper amount into that account. In the stipulation, there is no mention of an account to be opened at Smith, Barney. Nor, of course, was there any discussion of the additional amount of time it would take to open such an account at another brokerage house.

 A stipulation of settlement made in open court is not lightly cast aside, and strict enforcement of such settlements serves important interests of efficient dispute resolution and preserves the integrity of the litigation process. *Hallock v. State*, 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510, 512, 474 N.E.2d 1178 (1984). The court will set aside or modify the terms of a settlement reached in open court only upon a showing of good cause, such as fraud, collusion, mistake, accident, or lack of authority. *Id*; *Kulesa v. Middaugh*, 1999 WL 1253195 (N.D.N.Y.1999), *citing Siegel v. Ocean Park Housing Co.*, 248 A.D.2d 459, 460, 668 N.Y.S.2d 932 (2d Dept.1998).

 Here, although the Plaintiffs may have intended to transfer the contents of the account at Merrill, Lynch to another brokerage as quickly as possible, nothing in the stipulation of settlement placed on the record revealed that intent, nor required Merrill, Lynch to take any unusual actions to bring about that result. Merrill, Lynch's only duty under the settlement was to immediately create a new Merrill, Lynch account in the Plaintiffs' names and to promptly transfer the disputed funds into that account. Whether Merrill, Lynch thereafter owed some duty to the Plaintiffs as account holders to effectuate a transfer of their money *to another brokerage* in a timely fashion is a question that may have to addressed another day in a new lawsuit, should Plaintiffs choose to bring one. Such a duty certainly does not arise from the terms of the stipulation of settlement entered in the record on June 16, 1999.

Accordingly, the Plaintiffs' motion to re-open the settlement is DENIED.

**SO ORDERED.**