Graciano ROCCHIGIANI, Plaintiff,

v.

WORLD BOXING COUNCIL, INC., Defendant.

World Boxing Council, Inc., Third–Party Plaintiff,

v.

M & M Sports, Inc., Third–Party Defendant.

No. 98 Civ. 6781(RO).

United States District Court, S.D. New York.

Feb. 14, 2001.

Carol A. Dunning, Ross & Hardies, New York City, for plaintiff.

Gabriel I. Peñagaricano, World Boxing Council, Inc., San Juan, PR, for defendant.

### OPINION & ORDER

OWEN, District Judge.

Although the old adage is that one should roll with the punches, the wholly arbitrary and unfair conduct of the defendant in this case would leave anyone down for the proverbial count. The defendant World Boxing Council is a major prizefighting ranking organization that certifies and recognizes championship boxers in various weight divisions throughout the world. The WBC promulgates rules and regulations which govern its sanctioned bouts, including the percentage of the "purse" that individual boxers receive from WBC fights. Plaintiff Graciano Rocchigiani is a professional light heavyweight boxer (175 lbs.) and a German citizen.

Prior to November 1997, Roy Jones, Jr. was the WBC's undisputed Light Heavyweight Champion. WBC rules required Jones to defend his title against the next highest ranked challenger, Michael Nunn, by November 1997. Jones, for whatever reason, informed the WBC that he would not participate in the fight against Nunn. As a result, the WBC deemed its Light Heavyweight Title vacant and scheduled a fight between Nunn and Rocchigiani. On March 21, 1998, Rocchigiani defeated Nunn in the WBC Light Heavyweight Championship in Berlin. Promotional material printed in conjunction with the bout, such as tickets and posters, indicated that the fight was for the WBC Light Heavyweight Championship. At the end of the match, a WBC official presented Rocchigiani with the Title belt and, moreover, announced him to the viewing public as the world champion. From April through June 1998, WBC listed Rocchigiani as "champion" in its official rankings. The

WBC's President also wrote several letters congratulating Rocchigiani on his victory and referred to Rocchigiani as the world champion therein.

The written agreement setting up the event stated that the fight was for the "WBC World Championship."[1] The parties executed the agreement in Berlin on March 20, 1998, the day before the Rocchigiani–Nunn bout. The contract contained several pages of specific rules regarding fight mechanics, such as the three knockdown rule, number of trainers in each fighter's corner, scoring system, mouthpiece requirement, permissible weight of the boxing gloves, procedures in case a fighter is cut, a list of common fouls such as hitting below the belt, and even a space to be filled in regarding the color of the trunks worn by each fighter. The agreement, drafted on standard form by the WBC, also provided that the fight would be governed by the WBC Rules relating to world championship bouts. The WBC promulgates these rules and incorporates them by reference into its sanctioned bouts. Additionally, provision WC–39 of the contract addressed disputes related to a subject not specifically covered by the written agreement and purported to vest final decision on any such problem with the WBC.

Rocchigiani, as the new champion, had the right to defend his Title against Jones, the former champion. As the champion, Rocchigiani would be entitled to a high or higher percentage of the Title purse under WBC rules. A few months after Rocchigiani's victory over Nunn, in June 1998, however, the WBC suddenly declared Rocchigiani the "Interim" Light Heavyweight Champion and changed the rankings by designating Jones, previously the undisputed Title-holder, as the "Champion in Recess." The WBC, as stated by Presi-

---

1. The first paragraph of the agreement reads, "The following are the duly adopted and agreed to rules for the WBC World Championship bout of Lightheavyweight 175 pounds ... between the challenger Graciano Rocchi- giani of German nationality, and the contender Michael Nunn of U.S. nationality ... [.]" The word "interim" appears nowhere in the agreement.

dent Jose Sulaimán in his deposition of June 2, 2000, called the designation of Rocchigiani as champion in its rankings a "typographical error."

The WBC then set new terms for a championship bout between Jones and Rocchigiani, which included a purse split substantially less favorable than Rocchigiani believed he, as champion, was entitled to under WBC rules. When Rocchigiani protested, the WBC replied that its Board of Governors voted at the 1997 WBC Annual Convention that Rocchigiani and Nunn would fight for the interim title. The minutes show that the Board voted unanimously to sanction the Rocchigiani–Nunn bout for the interim title. The minutes of the 1997 Convention, however, were not finalized until October 1998—*eleven months after the Convention, seven months after Rocchigiani–Nunn bout and one month after Rocchigiani filed this action.* WBC contends that the Board of Governors decided the bout was only for the interim championship and that German promoters referred to the event as a fight for the "WBC (Interim) Lightheavyweight" title. WBC also takes the position that its own rules, incorporated by reference in the fight agreement, allow the Board of Governors to exercise its discretion and, at any time, make such a modification.

Not long after Rocchigiani's victory over Nunn, Premier Network, a German cable television network, offered to broadcast the Rocchigiani–Jones bout and to pay Rocchigiani for his participation. The deal was never consummated, however, because in late June 1998, the WBC revoked Rocchigiani's championship creating confusion as to who was the real champion. Rocchigiani petitioned for reconsideration of this decision through an attorney, but was repeatedly denied reinstatement.[2]

Rocchigiani initiated this diversity action on September 28, 1998 claiming breach of contract, breach of the duty of good faith and fair dealing, and seeking relief in equity.[3] He claims damages in the amount of $1,225,000 and now moves for summary judgment. WBC also moves for summary judgment on the grounds that it had discretion to sanction the bout as the *interim* championship fight, Rocchigiani did not exhaust administrative remedies and that equitable relief is not warranted because Rocchigiani has an adequate remedy at law. In March 2000, WBC filed a general third-party complaint against M & M Sports, Inc., promoter of the Rocchigiani–Jones bout, on the theory that it is or may be liable to WBC for damages Rocchigiani allegedly suffered in connection with the events surrounding the proposed Rocchigiani–Jones bout.[4]

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a

2. In one letter, the WBC president wrote to Rocchigiani's attorney, "What the TV announcers, the ring announcer or any other media called the fight was incorrect if it was called anything other than for the interim title … [.] Mr. Yellen [Rocchigiani's lawyer at the time], I realize an attorney must vigorously represent his client, but may I add that an over zealous representation is sometimes more harmful than helpful and it is the client who ultimately suffers."

3. Rocchigiani filed a supplemental and amended complaint dated March 2, 2000. This complaint alleges four causes of action: (1) breach of contract by the WBC, (2) breach of contract by M & M Sports, Inc. with respect to the Rocchigiani–Jones bout, (3) breach of the duty of good faith and fair dealing by the WBC and (4) equitable relief in the form of a declaratory judgment or specific performance.

4. For reasons not relevant to this motion, the Rocchigiani–Jones bout never transpired.

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party establishes a prima facie case demonstrating the absence of a genuine issue of material fact, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

Rocchigiani is entitled to summary judgment on his breach of contract claim embodied by the first cause of action in the supplemental and amended complaint. Under New York law,[5] "[T]he initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996) (internal marks and cites omitted). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998). A contract is unambiguous if it "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993). If a contract is unambiguous, I am "required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993).

Contractual language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation. *See United States Trust Co. of New York v. Jenner,* 168 F.3d 630, 632 (2d Cir.1999).

■ The language in the written agreement admits of only one possible interpretation: the Rocchigiani–Nunn bout was for the WBC Light Heavyweight Championship. The word "interim" is nowhere to be found within the four corners of the document. The WBC drafted the agreement, utilizing its standard form, and is and was fully capable of explicitly designating the bout as for the "interim" Title. However, it did not do so. The contract is clear and unambiguous because there can be no mistake regarding what was meant by the words "WBC World Championship bout of Lightheavyweight 175 pounds ... [.]" These words cannot reasonably be mistaken for WBC *Interim* World Championship bout of Lightheavyweight 175 pounds.

WBC argues that the Light Heavyweight Championship language appears only in the "recital" clause of the contract and is therefore unenforceable. This argument truly causes a raised eye brow. First, the only place in the WBC's standard form contract designating the nature of the bout is the preamble or recital clause; there is a blank and the weight class is to be filled in by hand. Second, nothing in the remainder of the contract states the Rocchigiani–Nunn bout was for a title other than the Light Heavyweight title.

---

5. Both parties rely on New York law in their submissions. Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Erie R.R. v. Tompkins,* 304 U.S. 64, 74–77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Having not been directed to any other controlling law, I also apply New York law despite the fact that the contract was executed

in Germany and the place of performance was Germany. *See Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of [New York law], all are deemed to have consented to its application. No reason of policy warrants a departure from their implied choice-of-law. In practice, litigants often ignore conflicts rules, opting instead to apply the law of the forum for reasons of familiarity, expediency or ignorance." (internal cites omitted)).

■ WBC also relies on its own rules, incorporated by reference into the fight agreement, granting it general discretion to classify bouts, establish purse splits and championships.[6] These clauses, however, cannot be read as vesting the organization with the power to act *nunc pro tunc* and agree that a bout is for one particular title and, subsequently, unilaterally reclassify the substance of that bout by making it something else. WBC claims to have the authority to undo that which has already been done. The provisions granting WBC general discretion to make final determinations cannot be given the wholly unreasonable meaning defendant proposes. It would swallow the purpose and sanctity of the contract because WBC could, apparently at any time, rescind that which was properly bargained-for and obtained through a party's performance. Indeed, WBC's arguments undermine the basic principles of contract which, *inter alia*, are to protect the expectations of the parties and provide certainty where the future would otherwise be uncertain.

Having determined that the terms of the contract are clear and unambiguous—that is, the contract specified that the Rocchigiani–Nunn bout was for the championship—I need not examine the intent of the parties, although disputed, because their intent is not relevant to the summary judgment inquiry. *See Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d Cir.1994) (holding where terms are unambiguous, any facts about the parties' intent are immaterial). The dispute with regard to the 1997 WBC Convention and other assertions that all parties "knew" the

Rocchigiani–Nunn bout was for the interim championship and not for the championship are immaterial in light of the plain language of the fight agreement.

■ Rocchigiani also alleges, on the basis of the same facts as his breach of contract claim, that WBC breached the implied covenant of good faith and fair dealing associated with the fight agreement. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992). Rocchigiani's claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed as duplicative of his breach of contract claim. *See Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263, 271 (S.D.N.Y.2000); *Nat'l Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F.Supp. 849, 855 (S.D.N.Y.1996).

■ Finally, WBC argues that Rocchigiani's failure to exhaust his private administrative remedies is fatal to his summary judgment motion and warrants judgment in its favor. I disagree. WBC relies on the portions of its rules which require: (i) a petition for reconsideration to be filed in the event title recognition is suspended or withdrawn under the rules (Rule 1.23); (ii) provide for exclusive jurisdiction for persons claiming rights under the WBC Constitution and rules (Rule 1.32); and (iii) mandating compulsory arbitration for any controversy or claim

---

**6.** Under its own rules, the WBC's discretion is not even as broad as it contends. The rule which it invokes has to do with the inactivity of a current champion and the WBC's right to designate an interim champion or a fight to determine an interim champion. Rule 1.27 allows for the designation of an interim champion under certain conditions, such as when the current champion remains inactive for more than six months due to medical or legal impediments. On this record, the rule is simply not applicable. It does not address the clear and unambiguous agreement before me. Although the WBC asserts that the situation contemplated by Rule 1.27—the inactivity of then WBC champion Roy Jones, Jr.—gave rise to the Rocchigiani–Nunn bout, that fact does not change or supercede the words on the written agreement.

arising out of or relating to the Constitution or WBC rules (Rule 1.33). These rules do not address contract claims flowing from breach of the express written agreement. Rocchigiani was not stripped of his title under the rules and makes no claims, in cause of action number one, with respect to his rights under the WBC Constitution or rules. His claim is based entirely on the written fight agreement providing that the Rocchigiani–Nunn bout was for the world championship. Rocchigiani's alleged failure to exhaust administrative remedies is therefore not fatal to his summary judgment motion.[7]

Accordingly, plaintiff's motion for summary judgment is granted with respect to WBC's liability on cause of action one, reserved on cause of action two pending briefing and argument with respect to claims against M & M Sports, Inc. and denied on cause of action three. Defendant's motion for summary judgment is denied in its entirety. The parties are directed to contact chambers to schedule a conference to determine how to proceed with respect to the issues of (1) remedies, (2) joinder of Roy Jones, Jr. and (3) claims against third-party defendant M & M Sports, Inc.

So ordered.

---

**7.** Even if Rocchigiani were somehow required to exhaust WBC grievance procedures, the record is replete with instances tending to suggest that efforts to win reinstatement or enforce the fight agreement were entirely fu-

tile. Indeed, as observed in footnote two, WBC officials told Rocchigiani's counsel to stop petitioning for relief and that it considered his requests to be overzealous advocacy.