**ABNER, HERRMAN & BROCK, INC., Plaintiff,**

v.

**GREAT NORTHERN INSURANCE CO., Defendant.**

**No. 02 CIV.6610(JGK).**

United States District Court, S.D. New York.

March 12, 2004.

Stuart P. Schlem, Law Offices of Stuart P. Schlem, L.L.C., Morganville, NJ, for Plaintiff.

Joshua Wall, Melissa Brill, Richard M. Mackowsky, Cozen O'Connor, New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge.

This case arises out of the denial of an insurance claim after the events of September 11, 2001. The defendant, Great Northern Insurance Co. ("Great Northern"), moves for summary judgment dismissing the complaint, arguing that there is no coverage under the policy for the losses claimed and that there is no evidence of actual damages suffered by the plaintiff. Great Northern also contends that the plaintiff did not file the claim in a timely manner. The plaintiff, Abner, Herrman & Brock, Inc. ("AHB"), cross-moves for partial summary judgment on its claim to recover continuing normal operating and payroll expenses for a thirty-day period beginning September 11, 2001.

## I

The following facts are undisputed except where specifically noted. The plaintiff, AHB, is an investment advisory firm and broker dealer incorporated in New York State with its principal place of business also in New York. (Compl. ¶ 1; Def.'s R. 56.1 St. ¶ 3.) The Chairman of AHB described AHB's business as follows: "AHB provides professional portfolio management to high-net-worth individuals and their families, endowments, foundations and corporate retirement plans." (Aff. of Howard Abner dated July 7, 2003 ("Abner Aff.") ¶ 3.) The defendant, Great Northern, is incorporated in Minnesota with its principal place of business in New Jersey. (Answer ¶ 2.) Great Northern issued an insurance policy (the "Policy"), insuring AHB for business income loss and extra expense, subject to the Policy's various terms and conditions, up to a limit of liability of $500,000 for the period April 23, 2001, to April 23, 2002. (Ex. A to Decl. of Melissa Brill dated May 29, 2003 ("Brill Decl."))

AHB claims it suffered a business income/extra expense loss covered by the Policy based upon the tragic events occurring on September 11, 2001. (Compl. ¶¶ 7–8.) While the plaintiff suffered no physical damage to its property as a result of the events, access to AHB's business premises in lower Manhattan was prohibited by civil authority through Friday, September 14, 2001. (Def.'s R. 56.1 St. ¶¶ 8–9; Tr. of Dep. of Howard J. Abner dated Apr. 10, 2003 attached as Ex. B to Brill Decl. at 29–31; Vehicular and Pedestrian Restrictions in Manhattan ("Restrictions") attached as Ex. C to Brill Decl.) AHB's office was located in an area of lower Manhattan where, from September 17, 2001, vehicular traffic was restricted, but pedestrian access was permitted, and public transit was available. (Def.'s R. 56.1 St. ¶ 9; Restrictions.) The plaintiff alleges that the traffic restrictions made it difficult for the plaintiff's employees to get to the premises as well as attend meetings around the downtown area, which was AHB's usual business practice. (Abner. Aff. ¶¶ 18–19.) More particularly, Howard Abner, the Chairman of AHB, points out that, "To best utilize my time outside of the office, AHB engages a full-time driver for my use

to attend research, client, and prospective client meetings." (*Id.* ¶ 17.)

The fair import of the plaintiff's position is that the emergency traffic restrictions put in place after the terrorist attack on September 11 put a crimp in the ability of its Chairman to use his car and driver, and walking and public transportation were not palatable alternatives. Mr. Abner also points out that "[w]hile my normal practice would involve leaving the office for meetings and returning later, security road blocks severely limited this activity." (*Id.* ¶ 18.) AHB apparently viewed the security restrictions as a hindrance to its business.

The Civil Authority provision of the Policy provides in relevant part that Great Northern:

> will pay for the actual business income loss you incur due to the actual impairment of your operations; and extra expense you incur due to the actual or potential impairment of your operations, when a civil authority prohibits access to your premises or a dependent business premises.

(Policy at Form 17–02–3063, at 4.) The Policy also provides that:

> coverage will begin immediately after the time the civil authority prohibits access and will end 30 consecutive days after this coverage begins; or when your business income coverage ends, whichever occurs first.

(*Id.*)

The Civil Authority provision of the insurance policy covers business income loss. (*Id.*) Determination of this loss includes consideration of the net income before damage, the likely net income if there had been no damage, and the continuing operating expenses necessary to resume operations at the level they were prior to the damage. (*Id.* at 8.) Losses attributable to the closure of the security, commodity, or currency exchanges are not covered under the Policy. (Policy at Form 17–02–3050, at 26.)

The Policy's notice provision states that "in the event of loss or damage," the insured must notify Great Northern or one of its "authorized representatives, as soon as possible, as to what occurred." (*Id.* at 18.) The facts pertaining to timely notice in filing the claim are disputed. AHB alleges that on November 28, 2001, Mr. Abner spoke to employees of Frank Crystal & Co. ("Crystal"), AHB's insurance broker, about the business interruption coverage. (Abner Aff. ¶ 30.) Mr. Abner claims that, on November 30, 2001, Crystal employees advised him that Great Northern had indicated that no coverage was afforded because the stock markets were closed. (*Id.* ¶ 31.) On January 18, 2002, an accountant who had reviewed AHB's policy advised Crystal that coverage was afforded and requested that Crystal begin the process of filing a claim under the Policy for AHB. (*Id.;* Ex. C to Abner Aff.) Great Northern alleges that it received the first notice of the plaintiff's new property insurance claim on January 21, 2002, from Crystal, AHB's broker. (Def.'s R. 56.1 St. ¶ 11.)

## II

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine is-

sues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

### III

The plaintiff claims that under the Civil Authority provision of the insurance policy, it is entitled to full coverage for five business days starting September 11, 2001, due to the civil prohibition from entering the premises, and to half coverage for the following twenty-five days due to the restraints the vehicular traffic prohibitions put on its normal operating procedures. (Pl.'s Rule 56.1 St. ¶¶ 6–7). AHB also claims that the full coverage should extend for five days (instead of the four days when the civil authority actually prevented access) due to confusion by employees over whether access to the premises was permitted on Monday, September 17, 2001.[1]

Great Northern contends that the insurance policy covers only those days when civil authority actually prohibited access and not subsequent days when other traffic restrictions made access to the premises more difficult, for example, by making it more difficult for AHB's Chairman to have his driver negotiate security roadblocks. (Answer ¶ 16.) The defendant stipulates that the insurance policy covers any business income loss or extra expense during the four day period in which access was prohibited by civil authority. (Def.'s Rule 56.1 St. ¶ 12; Answer ¶ 16.)

Under New York law, insurance policies are interpreted as contracts.[2] *See*

---

1. At the argument of these motions, the plaintiff's counsel appeared reasonably to limit its claim for full coverage to the four days when AHB's offices were actually closed by the civil authority. In any event, as explained below, there is no merit to the claim for coverage for September 17, 2001, when the civil authority did not prohibit access to AHB's offices.

2. This case was brought on the basis of diversity jurisdiction, and there is no dispute that New York law should be applied.

*Vill. of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995); *Napoli, Kaiser, & Bern, LLP v. Westport Ins. Corp.,* 295 F.Supp.2d 335, 337–38 (S.D.N.Y.2003). "The initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996) (quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir.1996)). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998); *see also Curry Rd. Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir.1990). A court should construe a contract as a matter of law only if the contract is unambiguous on its face. *See Met. Life Ins. Co. v. RJR Nabisco Inc.,* 906 F.2d 884, 889 (2d Cir. 1990). A contract is unambiguous if it "has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Plan,* 7 F.3d 1091, 1095 (2d Cir.1993) (quoting *Breed v. Ins. Co. of N. Am.,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)); *see also Alexander & Alexander,* 136 F.3d at 86; *United Nat'l Ins. Co. v. Waterfront N.Y. Realty,* 994 F.2d 105, 109 (2d Cir.1993); *Met. Life,* 906 F.2d at 889; *Donahue v. Artisian Entm't,* No. 00 Civ. 8326, 2002 WL 523407, at *4 (S.D.N.Y. April 8, 2002).

 If a contract is unambiguous, a court is "required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993); *see also Alexander & Alexander,* 136 F.3d at 86; *K. Bell & Assocs.,* 97 F.3d at 637. Contractual language "whose

meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." *Met. Life Ins. Co.,* 906 F.2d at 889; *see also United States Trust Co. v. Jenner,* 168 F.3d 630, 632 (2d Cir.1999); *Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2d Cir.1985). Where the contractual language is subject to more than one reasonable meaning and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation should be submitted to the trier of fact. *See Alexander & Alexander,* 136 F.3d at 86; *Consarc,* 996 F.2d at 573; *Simpson v. Mut. of Omaha Ins. Co.,* No. 97 Civ. 1339, 2000 WL 322780, at *3–4 (S.D.N.Y. Mar. 28, 2000); *see also Donahue,* 2002 WL 523407, at *5.

 In this case, the language of the insurance policy is unambiguous. The relevant part of the Civil Authority insurance provision states that Great Northern will pay for loss "when a civil authority prohibits access to your premises." (Policy at Form 17–02–3063, at 4). Because access was prohibited by civil authority from September 11, 2001, through September 14, 2001, the coverage applies only to these four days. The coverage does not extend through September 17, 2001, despite any confusion that AHB employees may have had about access to the premises and despite any difficulties AHB's Chairman or his driver may have had in getting around the city. The record is clear that as of September 17, 2001, no civil authority prohibited access to AHB's premises. *See 54th St. Ltd. Partners, L.P., v. Fid. and Guar. Ins. Co.,* 306 A.D.2d 67, 763 N.Y.S.2d 243, 244 (1st Dep't 2003) (holding that a civil authority provision applied only to the two days when access to the premises was denied and did not apply to the days thereafter because although vehicle and pedestrian traffic to the premises was

diverted, access was not denied to the public, employees, or vendors); *see also 730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, No. Civ.A. 02–106, 2002 WL 31996014 (E.D.La. Sept. 30, 2002) (holding that a civil authority provision did not apply to a Louisiana hotel whose business was affected by the FAA closure of airports after September 11, 2001, because access to the hotel was not "prohibited" by any order). Therefore, summary judgment is granted to the defendant on the issue of coverage for any claims by AHB after September 14, 2001.

## IV

■ The defendant argues that the plaintiff did not incur any business income loss or extra expense covered by the policy during the four days it was prohibited access by civil authority. (Answer ¶ 17.) There are disputed issues of material fact with respect to the losses incurred by the plaintiff. AHB claims that it lost business income because the prohibitions of the civil authority limited employees "from performing their normal level of activities," which "reduced the value AHB received from the expenditures incurred." (Abner Aff. ¶ 27.) Although it is clear that any losses attributable to the closing of the stock markets are not covered by the policy, it is not clear as a matter of law that AHB did not incur business income loss due to the inability of its staff to work at its premises from September 11, 2001, through September 14, 2001. Therefore, the defendant's motion for summary judgment is denied.

## V

■ The defendant also argues that even if the plaintiff has a claim under the policy, summary judgment should still be granted dismissing the complaint because the plaintiff did not give timely notice of a claim. "Under New York law, compliance with a notice of occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir.1995); *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir.1992); *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987). "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Commercial Union Ins. Co.*, 822 F.2d at 272. Prompt notice provisions, like the one here which requires notice "as soon as possible," require that " 'notice be given within a reasonable time under all the circumstances.' " *Myers v. Cigna Prop. & Cas. Ins. Co.*, 953 F.Supp. 551, 556 (S.D.N.Y. 1997) (quoting *Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76, 79 (1972)). A delay in giving notice may be excused if the insured lacked knowledge of the occurrence or had a reasonable belief in nonliability. *Olin Corp.*, 966 F.2d at 724; *Sec. Mut. Ins. Co.*, 340 N.Y.S.2d 902, 293 N.E.2d at 78–79. As the Court of Appeals for the Second Circuit recently explained, "a good-faith belief by the insured that an incident does not trigger coverage under its insurance policy" may excuse a seeming failure to give timely notice. *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir.2003). The insured bears the burden of proving that its delay was reasonable under the circumstances. *See, e.g., id.; Olin Corp.*, 966 F.2d at 724. Whether a delay is reasonable is an issue of fact, but courts may find a delay unreasonable as a matter of law if no excuse is given or if the excuse is not credible. *See Green Door Realty Corp.*, 329 F.3d at 287; *Olin Corp.*, 966 F.2d at 724; *see also Underwriters at Lloyd's of London v. 150 Nassau St. Billiards, Inc.*, No. 03 Civ.

1420, 2003 WL 22999464, at *8 (S.D.N.Y. Dec. 22, 2003).

There are disputed questions of material fact with respect to whether Great Northern can prevail on its defense of untimely notice. AHB claims that the defendant had notice of the claim on November 30, 2001, through communications with Crystal. Whether Crystal was an agent for Great Northern is disputed, and whether it communicated with Great Northern is disputed. Great Northern alleges that the plaintiff's first notice of the loss to Great Northern was dated January 21, 2002. The defendant also argues that even if notice was given on November 28, 2001, it still does not constitute timely notice. However, there are issues of fact over whether any such notice was timely and whether earlier notice was excused given questions over the interpretation of the Policy and the inevitable confusion following the tragic events of September 11. Because of the dispute over when actual notice occurred and because what constitutes unreasonable delay is ordinarily a question of fact for the factfinder, the issue of timely notice cannot be decided as a matter of law on this motion for summary judgment. *See Sparacino*, 50 F.3d at 144 (holding that summary judgment was in error where the insured had a reasonable belief of non-coverage and non-liability for the incident); *Power Auth. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 502 N.Y.S.2d 420, 422 (1st Dep't 1986) (stating that "what is reasonable is ordinarily left for determination at trial," but finding untimely notice as a matter of law because there was no excuse for the delay and an absence of mitigating factors).

### VI

Because a triable issue of fact exists as to timely notice of the claim, the plaintiff's cross-motion for partial summary judgment for continuing operating and payroll expenses for the four day period covered by the Policy is denied. That motion must also be denied because there are material issues of fact as to what, if any, losses AHB actually suffered for the four days for which it is entitled to coverage

### CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment is granted in part and denied in part. The plaintiff's motion for partial summary judgment is denied.

### SO ORDERED