**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

SOUTHERN HOSPITALITY, INC.;
AUGUSTA HOTEL LIMITED
PARTNERSHIP; BA HOTEL
LIMITED PARTNERSHIP;
CHARLOTTESVILLE HOTEL FUND
LIMITED PARTNERSHIP; COCOA
BEACH HOTEL FUND LIMITED
PARTNERSHIP; COLUMBIA HOTEL
LIMITED PARTNERSHIP;
DIAMOND BAR HOTEL FUND
LIMITED PARTNERSHIP;
LUBBOCK HOTEL FUND LIMITED
PARTNERSHIP; NOVI HOTEL
FUND LIMITED PARTNERSHIP;
LAKE BUENA VISTA VILLAGE
HOTEL FUND LIMITED
PARTNERSHIP; PHOENIX
METROCENTER HOTEL LIMITED
PARTNERSHIP; UNION CITY
HOTEL FUND LIMITED
PARTNERSHIP,

       Plaintiffs-Appellants,

v.

ZURICH AMERICAN INSURANCE
COMPANY,

       Defendant-Appellee.

No. 03-6294

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 02-CV-923-C)**

**SUBMITTED ON THE BRIEFS:**

Timothy D. DeGiusti and Bobbie T. Shell of Holladay, Chilton & DeGiusti, Oklahoma City, Oklahoma, for Plaintiffs-Appellants.

William D. Perrine and Jennifer L. Struble of Perrine, McGivern, Redemann, Reid, Berry & Taylor, PLLC, Tulsa, Oklahoma, for Defendant-Appellee.

Before **SEYMOUR** and **ANDERSON**, Circuit Judges, and **KANE**,[*] Senior District Judge.

**SEYMOUR**, Circuit Judge.

This case arises from the denial of insurance claims after the events of September 11, 2001. The district court granted summary judgment in favor of defendant insurance company, Zurich American Insurance (Zurich), on plaintiffs' claims that their loss of business income was covered by their Zurich policy. The losses were sustained because customers canceled their visits to hotels plaintiffs operated when the Federal Aviation Administration (FAA) grounded all airplane

---

[*] The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

-2-

flights in the United States.  We exercise jurisdiction under 28 U.S.C. § 1291 and

affirm.[1]

## I

Plaintiffs, who will be referred to collectively as "Southern Hospitality,"

manage a number of hotels throughout the United States that are highly dependent

on air travel.  Southern Hospitality's fee is based on the hotels' gross room

revenues.  Those revenues, and therefore Southern Hospitality's profits,

plummeted following the events of September 11 because the cancellation of

flights meant that Southern Hospitality's customers could not travel by air to its

hotels.

Southern Hospitality filed a claim with Zurich seeking coverage for its

business income losses under two provisions of the policy.  One provision covers

losses "caused by action of civil authority that prohibits access to the described

premises."  Aplt. App., vol. II, at 243.  The other provision covers losses caused

by damages to "dependent property," as defined in the policy.  *Id.* at 248-49.

Zurich denied the claim, contending the losses were not covered by the policy.

---

[1]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Southern Hospitality filed the underlying lawsuit for breach of the insurance contract, including a request for damages based on Zurich's bad faith. The district court granted Zurich's motion for summary judgment, holding that the policy does not apply to the situation here and denying the bad-faith claim. Southern Hospitality appeals.

We review *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). The underlying facts are undisputed in this case. Because Oklahoma law controls this diversity action, we endeavor to reach the same conclusion the state's highest court would reach. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

**II**

Under Oklahoma law, an insurance policy is a contract. *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 n.6 (Okla. 1996). "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of

contracting." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnote omitted). Whether the contract is ambiguous is for the court to decide, considering the contract as a whole. *Id.* at 545-46. "The test for ambiguity is whether the language is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 869 (Okla. 2003) (quotation omitted). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous." *Pitco Prod. Co.*, 63 P.3d at 545. In the absence of an ambiguity, the court must enforce an insurance contract according to its express terms, giving the policy's language its plain and ordinary meaning. *Id.* at 546 & n.22. In making this determination, we do not search for unusual or tortured meanings. *See Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1035 (Okla. 2002).

### A.

### *"Civil Authority" Clause*

Southern Hospitality first contends its losses were covered by the following policy provision:

> **Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense *caused by action of civil authority that prohibits access to the described premises* due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause

of Loss.  This coverage will apply for a period of up to two consecutive weeks from the date of that action.

Aplt. App., vol. II, at 243 (emphasis added).  There is no dispute that the FAA's order prohibiting the flying of airplanes qualified as an "action of civil authority." Rather, Southern Hospitality argues that the words "prohibits access" apply because its customers were prevented by the FAA order from coming to its hotels by air.  It does not dispute, however, that its hotels remained open for business at all relevant times.  Zurich counters that the flying restrictions did not prohibit access to Southern Hospitality's hotels because the hotels themselves were accessible, and therefore the policy does not apply.

Southern Hospitality contends the term "prohibits access" should be interpreted to provide coverage because it is ambiguous and the acceptable definitions include meanings that result in coverage.  We are not persuaded.  The plain and ordinary meaning of "prohibit" is to "formally forbid, esp. by authority" or "prevent." *Oxford American Dictionary and Language Guide* 795 (1999). "Access" means "a way of approaching or reaching or entering." *Id.* at 6.  The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations.  As the district court noted:

> Substitution of "prohibit" with any of the words suggested by Plaintiffs does not change the result as it does not alter the meaning of the policy.  For example, if "hinder" is used, the order must still hinder access to Plaintiffs' property.  Under the facts of this case, that requirement was not met.

Aplt. App., vol. II, at 442-43.

Cases applying the "prohibits access" language in similar policies have reached the same conclusion. In *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp. 2d 331, 333 (S.D.N.Y. 2004), access to the plaintiff's business premises in New York City was prohibited by civil authority following the September 11, 2001 attacks. The court held the "civil authority" provision was unambiguous and was applicable only to the four days access to the premises was completely prohibited by the order. *Id.* at 336-37. After the no-access order was lifted, pedestrian access to the premises was permitted and public transit was available. *Id.* at 333. The court held coverage was not available for the time after the civil authority lifted the no-access order, even though vehicular traffic was restricted in the area and "put a crimp in the ability of [the plaintiff's] Chairman to use his car and driver, and walking and public transportation were not palatable alternatives." *Id.* at 333-34, 336.

In a case much like the present one, the plaintiffs sought coverage for business losses resulting from the FAA's September 11 order and the subsequent cancellation of flights. *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 2002 WL 31996014, at *1 (E.D. La. Sept. 30, 2002) (unpublished). There, as here, the plaintiff lost business when its intended guests could not travel to its hotels. *Id.* at *2. Finding the policy language unambiguous, the court denied

coverage because the FAA's action did not prohibit access to the hotels. *Id.* "While the FAA's closure of the airports and cancellation of flights may have prevented many guests from getting to New Orleans and ultimately to plaintiff's hotels, the FAA hardly 'prohibited' access to the hotels." *Id.*

Coverage under a "civil authority" provision was similarly denied in the following cases where the civil authority order had only the indirect effect of restricting or hampering access to the business premises. *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003) (no coverage where "vehicular and pedestrian traffic in the area was diverted, [but] access to the restaurant was not denied; the restaurant was accessible to the public, plaintiff's employees and its vendors"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (unpublished) (no coverage when state authorities hampered access to claimant's casino-hotel by closing damaged bridge, because "casino-hotel was accessible during the period of time the bridge was under repair"); *Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2-3 (N.D. Cal. Mar. 21, 1995) (unpublished) (no coverage where theater access was never specifically foreclosed by civil authority order imposing dawn-to-dusk curfews in response to rioting following Rodney King verdict).

On the other hand, courts have found that access was prohibited where the order of a civil authority required the insured's premises to close, thereby invoking coverage for business losses. *Assurance Co. of Am. v. BBB Serv. Co.*, 593 S.E.2d 7, 7-9 (Ga. Ct. App. 2003) (county order to evacuate as Hurricane Floyd approached required closure of Plaintiff's restaurant); *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002) (unpublished) (order of town authorities directed Plaintiff to suspend plant operations due to Hurricane Floyd); *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 208 N.W.2d 569, 570 (Mich. Ct. App. 1973) (governor mandated closure of all places of amusement, including plaintiff's bowling alleys, restaurants, taverns and motels, due to rioting after assassination of Dr. Martin Luther King, Jr.).

The FAA's order stopped airplanes from flying; it did not close hotels. Considering the policy as a whole, we agree with the district court's conclusion that the policy was intended to cover losses from an order directly affecting the hotels, not one tangentially affecting them as here. As we see it, the policy requires a direct nexus between the civil authority order and the suspension of the insured's business. That nexus is missing here. We hold that the civil authority provision does not apply because the FAA's order grounding flights did not itself

prevent, bar, or hinder access to Southern Hospitality's hotels in a manner contemplated by the policies.[2]

## B.

### *"Dependent Property" Clause*

Southern Hospitality also claims coverage under the "dependent property" clauses, which apply as follows:

> A.     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." *The suspension must be caused by direct physical loss of or damage to "dependent property" at a premises described in the Schedule* caused by or resulting from any Covered Cause of Loss.
>
> * * *
>
> C.     . . . Miscellaneous Locations.  We will pay for the actual loss of Business Income you sustain *due to direct physical loss or damage at the premises of a "dependent property" not described in the Schedule* caused by or resulting from any Covered Cause of Loss.

---

[2]     Given our conclusion that access was not prohibited by the civil-authority order and there was therefore no coverage for business losses, we need not decide whether there was a qualifying "direct physical loss of or damage to property, other than at the described premises," which is also required under the civil authority provision. *See generally* Andrew B. Downs & Sean K. Hungerford, *Business Interruption Coverage:  A Primer On The Physical Loss Requirements*, 12-JUN NEV. LAW. 12, 12-13 (2004) (discussing cases addressing physical damage requirement in standard "civil authority" policy provision); Seth B. Schafler & Marjorie Han, *Civil Authority Coverage and Related Coverages*, 674 PLI/Lit 59, 61-71 (2002) (same).

Aplt. App., vol. II, at 248 (emphasis added). "Dependent Property" is defined in pertinent part as "property operated by others whom you depend on to . . . [d]eliver materials or services to you . . . [a]ccept your products or services . . . [m]anufacture products for delivery to your customers . . . [a]ttract customers to your business." *Id.* at 249.

As the district court noted, Southern Hospitality did not offer evidence to controvert Zurich's contention that there was no proof of physical loss or damage to a dependent property, a necessary component of coverage. Southern Hospitality now contends the district court addressed only part A of the policy's provisions pertaining to "dependent property" because it was the only provision referenced by Zurich's motion for summary judgment, and that the court erred by failing to address part C. But Southern Hospitality does not demonstrate that its chosen clause provides coverage, and we do not see that it does. Both parts A and C require physical loss or damage to dependent property, and, as Zurich has pointed out, "Southern Hospitality has not identified any scheduled contributing property which was damaged by a covered cause or loss, nor any unscheduled dependent property which sustained physical damage from a covered cause of loss." Aple. Br. at 24. Southern Hospitality's failure of proof in this regard applies equally to both provisions.

-11-

Moreover, Southern Hospitality has not shown that this specific issue was brought to the district court's attention. Southern Hospitality raised it only as a challenge to Zurich's statement of facts in its summary-judgment motion, but did not argue that this particular clause provided coverage even if the other dependent property clause did not. "Where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented [to the trial court] or presents a theory that was discussed in a vague and ambiguous way[,] the theory will not be considered on appeal." *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir. 1996) (quotations omitted), *amended on other grounds*, 103 F.3d 80 (10th Cir. 1996). Accordingly, we will not disturb the district court's judgment.

### III

Finally, we address Southern Hospitality's claim that Zurich failed to deal fairly and in good faith. Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977); *accord Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561-62 (Okla. 2004). Southern Hospitality asserts that Zurich's bad faith was demonstrated by its internal policy decision to deny all claims under the

"civil authority" provision related to the September 11 events, except for certain property located in New York City.

If there is a legitimate dispute about coverage, an insurer's decision to refuse to pay a claim or to litigate a dispute is not a breach of the duty of good faith where the insurer's position is "reasonable and legitimate." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (quotation omitted) (applying Oklahoma law). Given our determination that the insurance policy does not provide coverage to Southern Hospitality, we conclude that Zurich had a reasonable basis for denying coverage and cannot reasonably be seen as acting in bad faith. Accordingly, summary judgment on this issue was correct. *See Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (summary judgment appropriate where insurer's conduct cannot reasonably be perceived as tortious) (applying Oklahoma law).

We **AFFIRM** the judgment of the district court.