**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, | |
| Plaintiff - Appellant, | No. 05-6087 |
| v. | W.D. Oklahoma |
| DOLESE BROS. CO., an Oklahoma corporation, | (D.C. No. CIV-04-0107-C) |
| Defendant - Appellee. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Union Pacific Railroad Company ("Union Pacific") filed this action seeking to enforce an indemnity provision in a contract relating to an industrial spur line on property belonging to the Dolese Brothers Company ("Dolese"). The district court denied Union Pacific's motion for summary judgment and granted Dolese's motion for summary judgment. Union Pacific appeals, and we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

On May 13, 1985, Union Pacific and Dolese entered into an Industrial Track Agreement ("ITA") to establish an industrial spur line on Dolese's Sand Plant property in Dover, Oklahoma. As part of the construction of that line, derail devices were located close to each end of the spur line. The derail device is a safety mechanism that derails any railroad car which attempts to roll onto the main railroad line. Union Pacific padlocks the derail devices and maintains complete control over the keys to the padlocks. Union Pacific employees operate the derail devices as needed.

The ITA provided that Dolese "shall at all times keep the area between the rails and within the lateral clearance area . . . free and clear of debris and/or obstructions of any kind or nature." ITA at 4, Appellant's App. Vol. I at 16. The Agreement also provided that Dolese would indemnify Union Pacific against "any and all claims, demands, expenses, costs and judgments" resulting from Dolese's failure to perform its obligations, including the obligation to keep "debris and/or obstructions of any kind" off the spur line. Id.

On May 16, 2001, Union Pacific employee Charles M. Sykes suffered a back injury while attempting to operate the derail device at the Dolese Sand Plant. Union Pacific alleges that "Sykes['] injury occurred because Dolese failed to properly maintain the derail device by allowing it to become full of sand and

grit." Appellant's Opening Br. at 4. Union Pacific and Sykes reached a settlement in the sum of $180,000, with an additional $8,449.47 in attorney's fees, in satisfaction of the railroad's nondelegable duty under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, to provide a safe workplace.

Union Pacific then brought this diversity action seeking to enforce either the indemnification or the contribution provision of the ITA. Both parties filed motions for summary judgment. The district court granted Dolese's motion and denied Union Pacific's. This appeal followed.[1]

Union Pacific argues the district court erred in (1) finding that sand in, on and around the derail device did not constitute "debris and/or obstructions of any kind or nature" under the ITA; (2) failing to find that the indemnity provision in the ITA requires Dolese to indemnify Union Pacific for the settlement costs and attorney's fees incurred in the Sykes action; (3) denying Union Pacific a jury trial on the factual question of whether sand constituted "debris and/or obstructions of any kind or nature" under the ITA; (4) "determining that the derail device . . . was not contemplated under the [ITA]"; (5) granting summary judgment to Dolese; and (6) denying summary judgment to Union Pacific. Appellant's Opening Br. at 1-2.

---

[1]Union Pacific concedes that only the contractual indemnification claim is at issue in this appeal.

## DISCUSSION

We review de novo the district court's grant of summary judgment. Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1287 (10th Cir. 2005); Mo. Pac. R.R. Co. v. Kan. Gas & Elec. Co., 862 F.2d 796, 798 (10th Cir. 1988). We apply the same standards as did the district court. Thus, "[s]ummary judgment shall be granted if there is 'no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" Zurich N. Am., 426 F.3d at 1287 (quoting Fed. R. Civ. P. 56(c)). Further, we "must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). As a federal court sitting in diversity, we must apply Oklahoma substantive law. See Reed v. Landstar Ligon, Inc., 314 F.3d 447, 450-51 (10th Cir. 2002).

Under the FELA, "'a railroad has the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control.'" Mo. Pac. R.R. Co., 862 F.2d at 797 (quoting Shenker v. Balt. & Ohio R.R. Co., 374 U.S. 1, 7 (1963)). Accordingly, Union Pacific required a guarantee of indemnification for expenses incurred as a result of injuries its employees might suffer while working on Dolese's property. The ITA therefore contained the following language:

(f) [Dolese] shall at all times keep the area between the rails and within the lateral clearance area hereinbefore provided free and clear of debris and/or obstructions of any kind or nature . . . .

(g) [Dolese] agrees to indemnify [Union Pacific] and save it harmless from and against any and all claims, demands, expenses, costs and judgments arising or growing out of loss of or damage to property whosesooever, or injury to or death of persons whomsoever, including the parties hereto, their agents and employees, occurring directly or indirectly by reason of any breach of the foregoing covenants to be kept by [Dolese] . . . and regardless of whether caused or contributed to by any acts or omissions o[f] [Union Pacific], its agents or employees.

ITA § 5(f), (g), Appellant's App. Vol. I at 16.

The Oklahoma courts apply the following rules in construing the language

of a contract:

If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting. Whether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt is a question of law for the courts.

Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003)

(footnotes omitted); accord S. Hospitality, Inc. v. Zurich Am. Ins. Co., 393 F.3d

1137, 1139 (10th Cir. 2004) (discussing Oklahoma law on construing contracts).

"The test for ambiguity is whether the language is susceptible to two

interpretations on its face . . . from the standpoint of a reasonably prudent lay

person, not from that of a lawyer." Spears v. Shelter Mut. Ins. Co., 73 P.3d 865,

869 (Okla. 2003) (internal quotation omitted). "The mere fact the parties disagree

or press for a different construction does not make an agreement ambiguous." Pitco Prod. Co., 63 P.3d at 545. Further, we must consider a contract "as a whole so as to give effect to all its provisions." Id. at 546. We accord the language in a contract "its plain and ordinary meaning unless some technical term is used in a manner intended to convey a specific technical concept." Id.; see also S. Hospitality, Inc., 393 F.3d at 1139.

The district court applied those principles and interpreted the ITA as a matter of law as follows:

> Neither litigant argues that § 5(f)-(g) is ambiguous; they merely differ as to whether or not sand constitutes "debris and/or [an] obstruction[]" in breach of the ITA. After viewing the ITA as a whole, the Court finds that § 5(f)-(g) is clear, unambiguous, and not susceptible to two reasonable interpretations; accordingly, the Court interprets § 5(f)-(g) as a matter of law.

Order at 6-7, Appellant's App. Vol. II at 234-35. Applying the definition of "debris" contained in The American Heritage Dictionary 481 (3d ed. 1992),[2] the court concluded that "Dolese's product [sand] clearly does not fall within the plain and ordinary meaning of 'debris.'" Order at 7, Appellant's App. Vol. II at 235. After noting that the dictionary definition of "obstruction" in § 5(f)'s phrase "obstruction[] of any kind or nature" seems "all-inclusive," id., the court interpreted the phrase in the context of the entire ITA: "the Court must view the

---

[2]The dictionary defined "debris" as "the scattered remains of something broken or destroyed; rubble or wreckage . . . carelessly discarded refuse; litter."

-6-

ITA as a whole and give effect to all of its provisions in order to determine what the litigants' intent was regarding obstructions on the Dolese spur track." Id. at 8, Appellant's App. Vol. II at 236. Thus, the court concluded that "it is clear from a complete reading of ITA § 5, entitled 'Clearances,' that the litigants intended to contract only for the unobstructed movement of Union Pacific's trains for the full length of the Dolese spur track." Id. The court summed up as follows:

> Construing the ITA as a whole, using each clause to interpret the others, and giving effect to the litigants' general intent, the Court finds that the sand which accumulated around the derail device does not constitute an obstruction as contemplated by the ITA. Therefore, Dolese did not breach the ITA and the indemnification provision is not triggered.

Id. at 9, Appellant's App. Vol. II at 237.

Union Pacific argues that the court erred in numerous ways in reaching that conclusion. We disagree.

As the district court correctly observed, both parties thought the provisions of ITA § 5(f) and (g) were clear and unambiguous; they just differed as to what those provisions meant. We agree with the court and with Dolese that the sand which spilled from trains loading sand from Dolese's business was not "debris" or an "obstruction" within the meaning of the ITA read as a whole. It did not, and, in the quantities present in this case, could not, impede the passage of trains along the spur, nor was it "debris" in the ordinary sense of the word.

-7-

In addition to the district court's reasoning on that point, with which we agree, the evidence was undisputed that the derails were padlocked, that only Union Pacific employees had keys to unlock them, that only Union Pacific employees operated the derails and that the derails existed to protect trains passing along the Union Pacific main tracks. Thus, as Dolese argues, only Union Pacific employees could determine whether sand was impeding the operation of the derails.[3] Further, Union Pacific painted the derails periodically to ensure that they were visible. See Dep. of Billy R. Johnson, Appellant's App. Vol. II at 203-05. It is accordingly clear that the parties intended that Union Pacific would maintain the derails in good operating condition, including keeping them free of sand to the extent necessary to ensure their proper operation. See Ill. Cent. R.R. Co. v. Standard Oil Co., 292 F. Supp. 337, 339 (S.D. Miss.) (denying railroad's claim for indemnification for costs incurred as a result of railroad employee's injury caused by defective grab-iron "in [the railroad's] exclusive possession and control"), aff'd per curiam, 403 F.2d 1022 (5th Cir. 1968).

**CONCLUSION**

---

[3]The injured employee, Sykes, allegedly suffered his back injury because it was more difficult than normal to operate the derail because of sand.

For the foregoing reasons, we AFFIRM the district court's decision granting Dolese's motion for summary judgment and denying Union Pacific's motion for summary judgment.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

05-6087 *Union Pacific RR v. Dolese Bros. Co.*

**O'BRIEN**, dissenting.

The district court and the majority of this court define debris more restrictively than vernacular usage suggests. Moreover, neither the contract language nor Union Pacific's conduct (locking and painting the derails) suggests Union Pacific was responsible to keep the derails free of sand. For those reasons I respectfully dissent.

Section 5(f) of the ITA imposes upon Dolese a duty to keep "the area between the rails and within the lateral clearance area [of the spur track] free and clear of debris and/or obstructions of any kind or nature . . . ." Section 5(g) requires Dolese to indemnify Union Pacific for expenses it incurs as a result of Dolese's breach of § 5(f). Because the ITA does not define the term "debris," we turn to its plain and ordinary meaning. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546 (Okla. 2003) ("The language in a contract is to be given its

plain and ordinary meaning unless some technical term is used in a manner intended to convey a specific technical concept.").

"Debris" is defined as:

> The remains of anything broken down or destroyed; ruins, wreck: a. orig. (in Eng.) fig.; b. in Geol. applied to any accumulation of loose material arising from the waste of rocks; also to drifted accumulation of vegetable or animal matter (Page); thence, c. any similar rubbish formed by destructive operations.

OXFORD ENGLISH DICTIONARY ONLINE (2005).

"Debris" is also defined as:

1. The scattered remains of something broken or destroyed; rubble or wreckage.

a. Carelessly discarded refuse; litter.

*2. Geology.* An accumulation of relatively large rock fragments: *glacial debris.*

*3. Biology.* The fragmented remains of dead or damaged cells or tissue.

THE AMERICAN HERITAGE® DICTIONARY OF THE ENGLISH LANGUAGE, (4th ed. 2000).

The district court concluded the accumulation of spilled sand is not "debris" because sand is Dolese's main product. The Majority appears to agree.

I do not. The sand may be a valuable commodity to Dolese, but only when it is marketable. When it is spilled during loading or yard transport, and not reclaimed, it loses its identity as product and becomes "discarded refuse;" the "scattered remains" of marketable sand. Hence it is "debris." That is particularly true here when the parties used broad and all-inclusive language in the phrase "debris . . . of any kind or nature." I can discern no intent to exclude Dolese's product. Were Dolese in the refuse reclamation business, the garbage it spilled during loading or transport would be "debris" even though it would also be the main product.

Derails are hinged devices attached to one of the rails and serve two purposes. In their usual position, hinged over the rail and locked down, their purpose is to derail railroad cars on the spur line to prevent them from rolling onto the main line and colliding with trains. On the other hand, when the derails are unlocked and hinged to the open position they allow railroad cars to pass from the spur to the main line, presumably under controlled conditions. Dolese's contractual obligation "to keep the area between the rails . . . free and clear of . . . obstructions of any kind"[1] includes not only obstruction to the rails, but also the

---

[1]There is no question that the derail is "within the lateral clearance area [of the spur track]."

derail.[2] Were sand to accumulate on or about the derail in sufficient quantity to obscure it or impair its function, the passage of cars to and from the spur would be obstructed. The contract must be construed in light of its obvious purpose—the safe and efficient movement of railroad cars to and from the spur. Because Dolese agreed to keep the spur track free of obstructions and debris, it breached that duty by allowing sand to accumulate in and around the derail.

Because of the posture of this case I attach no significance to the fact that the derails were padlocked and only Union Pacific employees could operate them (or that Union Pacific painted them). The issue presented was not whether sand was adequately removed, but which party was contractually obligated to see to its removal. Sykes, the injured Union Pacific employee, testified in his deposition:

> I had to dig the switch out. I mean, dig the lock out. And, also, I had to dig a hole deep enough to allow the derail to fit in once it come off the rail. It's got to be track level, or else you're going to hit it with your engine.

---

[2]Dolese argues the derails are located at the point where the spur track and main line meet and therefore are not within the area of its responsibility, *i.e.*, the spur track. The diagram attached to the ITA provides support for this argument. However, the affidavit of Billy Johnson, a Union Pacific Manager of Track Maintenance for twenty-eight years, states the derails at issue were located on the spur track, seventy feet from the point where the spur track and main line meet. Pictures of the derails taken by Gary Gott, a Union Pacific Senior Claims Representative, support Johnson's affidavit. Moreover, that the derails are located seventy feet from where the main and spur tacks meet is logical, as it makes little sense to derail a train at the point where the tracks meet.

Dolese could remove the sand from around the derails without opening them.[3]

While it may not foreclose other issues, Dolese agreed to keep the spur track (which contained the derails) free from debris and/or obstructions of any kind or nature. That duty is not dependent upon who might be authorized to open the derails.

I would reverse the summary judgment entered by the district court.

---

[3]If a party contracted to keep a yard free of weeds but failed to do so in the area around a shed, that party could not credibly argue that its contractual obligation was negated because the shed was locked.