**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE W. SMITH, JR.,

　　　　Plaintiff-Appellant,

v.

STEVE BECK, Warden; LEWIS
MCGEE, Major of Security;
EDDIE RANEY; UNKNOWN
OFFICERS; and C.T. HURD, Unit
Manager,

　　　　Defendants-Appellees.

No. 04-7102

(E. D. Oklahoma)

(D.C. No. CIV-03-331-P)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY**, and **HENRY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

　[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

George W. Smith, Jr., a state prisoner appearing pro se, brings suit pursuant to 42 U.S.C. § 1983 alleging that prison officials (1) violated his Eighth Amendment right to be free from cruel and unusual punishment and (2) were deliberately indifferent to racism in the prison. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM the district court's summary judgment dismissal for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## I. BACKGROUND

On September 29, 2002, a prison gang known as the Aryan Brotherhood attacked and assaulted Mr. Smith, a prisoner who was, at that time, housed at the Mack Alford Correctional Center. After the attack, Mr. Smith received medical attention to his eye, and later, was transferred to a different prison.

In his amended complaint, Mr. Smith states that he spoke with Defendants Hurd, McGee, and Raney on September 30, 2002, where Mr. McGee told Mr. Smith that prison officials knew prior to the assault that Mr. Smith was at risk for attack. Rec. doc. 13, at 2 (Am. Compl., dated Oct. 30, 2003). Mr. Smith also states that he filed two Requests to Staff on October 2, 2002, one "requesting to be moved from the hostile area he was in to another location" and another requesting protective custody. Rec. doc. 19, at 3 (Pl.'s Resp. to Mot. to Dismiss, dated Feb. 20, 2004); *see also* Rec. doc. 12, at 3 (Mot. to Strike Def.'s Mot. to

2

Dismiss, dated Sept. 30, 2003) (referencing the two Requests to Staff). Later in October, Mr. Smith was transferred to CCA/Davis Correctional Center in Holdenville.

On May 6, 2003, Mr. Smith filed another Request to Staff, labeled it as an "out of time" request, and requested monetary damages from the Defendants for their alleged role in his attack and for pain and suffering. Rec. doc. 1, at 7 (Compl., dated June 11, 2003). On June 6, 2003, he filed a grievance also self-labeled as "out of time," again requesting monetary damages from the Defendants because of the September attack. *Id.* at 8.

Mr. Smith filed his first complaint in the district court on June 11, 2003, alleging that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by keeping him in a hostile environment and allowing him to be attacked by the prison gang. Additionally, Mr. Smith alleged that the Defendants were deliberately indifferent to the racism in the prison because all "support the white race movement and are bias[ed against] black inmates." Rec. doc. 13, at 3 (Am. Compl., dated Oct. 30, 2003).

The Defendants filed a motion to dismiss, and the district court converted the motion into a motion for summary judgment so it could "consider matters outside of the record." Rec. doc. 38, at 2 (Order, dated Sept. 15, 2004). Before making its decision, the court ordered the Defendants to provide a record or log

of all grievances that Mr. Smith filed from September 28, 2002 to August 2003. Rec. doc 30 (Order, dated Aug. 4, 2004). After receiving copies of all grievances filed, the district court granted the Defendants summary judgment because Mr. Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). On appeal, Mr. Smith argues that (1) he did, in fact, exhaust his administrative remedies, and (2) even if he did not properly exhaust administrative remedies, it is because prison officials interfered with his ability to do so.

## II. DISCUSSION

We review de novo a district court's grant of summary judgment. *So. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139 (10th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Below, we consider each of Mr. Smith's arguments on appeal, viewing the record in the light most favorable to him. *So. Hospitality*, 393 F.3d at 1139. We construe his arguments liberally because he is pro se. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A.      Exhaustion of Remedies

The Prison Reform Litigation Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title .

4

. . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The prisoner must exhaust administrative remedies even if administrative procedures "would appear to be futile at providing the kind of remedy sought." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Id.*

The Oklahoma Department of Corrections (ODOC) has promulgated a set of procedures that a prisoner must use "prior to filing a lawsuit." ODOC Policy OP-090124. First, a prisoner must attempt to resolve the issue informally "by talking [with an appropriate prison official] within 3 days of the incident." *Id.* at (IV)(A). If this does not resolve the problem, the prisoner "must submit a 'Request to Staff'. . . stating completely but briefly the problem." *Id.* at (IV)(B). The prisoner must submit the Request to Staff within seven days of the incident.

If the Request to Staff does not resolve the incident, or if prison officials do not respond to it, then the prisoner begins the formal resolution process and must submit a grievance within fifteen days of the incident or the date of the response to the Request to Staff, "whichever is later." *Id.* at (V)(A). If the prison staff failed to respond to the Request to Staff thirty days after its submission, the prisoner may submit the grievance without having received a response. *Id.* at

5

(IV)(B)(5). "The 'Request to Staff' must have been timely submitted." *Id.* at (V)(A)(1).

The ODOC policies permit a prisoner to circumvent the informal resolution processes and submit a grievance without first talking to an appropriate official and submitting a Request to Staff, provided that the grievance addresses a sensitive or emergency matter. *Id.* at (VIII)(A). A prisoner must use a particular form and write the word "emergency" at the top of the form. *Id.* If a prisoner wishes to seek permission to file an untimely grievance, he must wait until the reviewing authority has denied the initial grievance "due to the grievance not being submitted in a timely manner." *Id.* at (XII)(A). After this, the prisoner may submit a request to file out of time to the prison director. *Id.* at (XII)(B). "Under no circumstances will [a] grievance be accepted after 60 days of the incident . . . unless ordered by a court, the director, chief medical officer, or their designee." *Id.* at (V)(A)(3).

Mr. Smith asserts that he spoke with prison officials on September 30, 2002, within three days of the incident, and that he filed two Requests to Staff in early October, within seven days of the incident. Mr. Smith's two Requests to Staff, however, did not complain about the underlying problem in this lawsuit – prison officials' alleged complicity in connection with the assault. Rather, they concerned, as Mr. Smith himself stated, a request "to be moved from the hostile

6

area he was in to another location . . . [and another] for the same and possible placement in Protective Custody." Rec. doc. 19, at 3. Even if these Requests to Staff had related to Mr. Smith's complaints in the instant appeal, he failed to file a grievance within the appropriate time frame. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032.

Mr. Smith additionally argues that his May 6, 2003 Request to Staff and June 6, 2003 grievance that are labeled "out of time" should suffice for exhaustion purposes. ODOC policies do permit a prisoner to request permission to submit a grievance out of time, *see* ODOC Policy OP-090124(XII), but as the district court noted, there is no evidence in the record that Mr. Smith followed the appropriate procedures necessary to obtain permission from the prison director to file out of time.

Finally, Mr. Smith asserts that his claims were of an emergency/sensitive nature, and that the prison officials' failure to respond should excuse his failure to exhaust his administrative remedies. Again, however, ODOC policies specify that Mr. Smith had only fifteen days from the date of the incident to submit a grievance, or sixty days if granted an extension, and his 2003 submissions were well outside both these windows of time. Although a prison official's failure to

respond to a grievance can make the administrative exhaustion process unavailable, *see Jernigan*, 304 F.3d at 1032, the ODOC policies provide alternatives: as explained above, prisoners may continue to appeal within the prison system even if they do not receive responses to their Requests to Staff or their grievances. Thus, prison officials' alleged failure to respond does not excuse Mr. Smith's failure to exhaust his administrative remedies.

B.      Interference with Exhaustion of Remedies

In *Jernigan*, this circuit considered the language of the PLRA's exhaustion requirement and held that only "available" administrative remedies need to be exhausted. 304 F.3d at 1032. A few unpublished cases have considered situations where the prisoner alleges that prison officials prevented him from effectively exhausting his administrative remedies. *See, e.g., Baughman v. Harless*, 142 F. App'x 354, 358-59 (10th Cir. 2005) (unpublished) (holding that summary judgment is inappropriate when prisoner provided affidavit evidence that he mailed his grievance form); *Johnson v. Wackenhut Corr. Corp.*, 130 F. App'x 947, 951 (10th Cir. 2005) (unpublished) (affirming district court's dismissal for failure to exhaust administrative remedies where prisoner alleged prison officials prevented him from doing so, "yet there is no evidence that he ever requested a grievance form or otherwise requested assistance with the grievance process").

Mr. Smith alleges that his transfer to a new prison in October 2002 prevented him from complying with the grievance process because prison officials did not let him take any of his property with him, including copies of previous requests that he would need to have when filing a grievance. ODOC Policy OP-090124(IV)(B)(5). As we explained above, however, the early October Requests to Staff did not pertain to the underlying issues in this appeal. They concerned Mr. Smith's requests for transfer and protective custody, not allegations that prison officials allowed him to be assaulted. Thus, even if prison officials prevented Mr. Smith from appealing these Requests to Staff, these appeals would have had no bearing on whether Mr. Smith exhausted his administrative remedies in this case.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment to the Defendants because Mr. Smith failed to exhaust his administrative remedies as required by the PLRA.

Entered for the Court,


Robert H. Henry
Circuit Judge

9